UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No: 22-cr-618 JPC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL HABIB

    Defendant.

---

## MICHAEL HABIB'S SENTENCING MEMORANDUM

PHILIP L. REIZENSTEIN, ESQ.
Reizenstein & Associates, PA
2828 Coral Way
Suite 540
Miami, FL 33145
Fla Bar No: 634026
(305) 444-0755
Phil@Reizensteinlaw.com
Service@Reizensteinlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................2
I)    INTRODUCTION..................................................................................................2
ARGUMENT ...................................................................................................................3
II)   DISPARATE TREATMENT OF CO-DEFENDANTS....................................3
III)  HARSH CONDITIONS AT MDC BROOKLYN ............................................6

# TABLE OF AUTHORITIES

**Cases**

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). ............................................... 6
*Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035 (1996) ............................................... 5
*Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392 (1981)............................................... 6
*United States v. Carty*, 264 F.3d 191 (2d Cir. 2001) .......................................................... 5
*United States v. Chavez*, 22-cr-303(JMF).......................................................................... 5
*United States v. Days*, 19-CR-619 (CM) (S.D.N.Y. Apr. 29, 2021) ................................. 8
*United States v. Francis*, 129 F. Supp. 2d 612 (S.D.N.Y. 2001)........................................ 5
*United States v. Gonzalez*, 18-cr-00669 JPO (SDNY May 2, 2021) ................................. 9
*United States v. Morgan*, 19-CR-209 (RMB) (S.D.N.Y. May, 5, 2020)............................ 9

## I)    INTRODUCTION

Defendant Michael Habib, by and through undersigned counsel, respectfully submits the following sentencing memorandum.

Michael Habib is before this Court because he participated in a drug conspiracy. He was approached by the buyer, who was someone he had engaged in prior dealings with marijuana and tobacco, and provided him with names of sellers when the buyer approached him asking to get involved in more serious deals so that he could make more money. Habib has not denied making the introduction or knowing the purpose of the

2

introduction. Regarding the second shipment, which is charged in this indictment, Habib's plea of guilty included his recognition of sending a text message asking to coordinate the receipt of the shipment of the drugs arriving in New Jersey, ECF 166: ¶14, and forwarding a text and picture from the then informant showing the seizure of the shipment. Those pieces of evidence, along with Habib vouching for the truthfulness of the informant after the first seizure, and telling the informant that both he and Habib were responsible for the loss of the drugs, are parts of the evidence that led Habib to accept responsibility and plead guilty to participation in a drug conspiracy.

The events of this case and the evidence brought Habib before this Court and resulted in his plea and acceptance of responsibility. But there is more to Michael Habib than the side of him this case has exposed.

## ARGUMENT

### II) DISPARATE TREATMENT OF CO-DEFENDANTS

The factors under 18 USC § 3553(a)(6) specifically instruct this Court to consider the sentences of others similarly situated and avoid sentencing disparities. And yet the Court is powerless to an extent to avoid sentencing disparities in this case despite, upon information and belief, that the co-defendants have been held responsible for a significantly higher quantity of controlled substances than the 150-450 kilograms of cocaine attributed to Habib in paragraph 5(a)(ii) of the pre-sentence report.

While the Government is free to structure plea offers as it sees fit, this Court is directed by Congress to avoid unnecessary disparities in sentencing and should do so

by sentencing Habib to the ten-year minimum mandatory sentence, which would be forty-eight months below the bottom of the guidelines.

The PSR recommendation of 180 months is troubling. ECF 166: p. 34. The report states that Habib "*Played a significant role in this narcotics conspiracy. He arranged a large quantity of cocaine shipments, recruited members, made credible threats, and maintained communication with the violent leader of a large drug trafficking organization in Canada.*" ECF 166: p. 35.

The first issue is the use of the word *"shipments"* in the plural. The evidence in this case is not that Habib "arranged" drug shipments; the buyer who became the informant did that. The PSR reports that law enforcement did not have sufficient evidence to charge Habib with the Kansas City shipment. ECF 166: ¶ 26. While Habib had frankly admitted his involvement in this case, it began when the buyer/informant asked him for help to make more money by getting involved in more serious drug transactions, there is a difference in what Habib did and arranging shipments. Arrangement implies being the genesis of the deal which Habib was not, along with ownership and control as well as entitlement to a greater share of proceeds. And while Habib has admitted criminal conduct, he is entitled to be sentenced based on what he did. With the absence of the buyer in this indictment, Habib has been placed in the role of the buyer/informant, and the Government is seeking a sentence that should be the one given to the buyer/informant.

The defense's point in the recitation of facts is not that Habib has denied involvement with people involved in the transportation of drugs, or that he has denied violating the law, but that his sentence should be commensurate with what he did-

4

and not enhanced because of who he knows and the absence of the person who started the criminal activity.

Probation's recommendation appears to be influenced by extraneous information about the Wolfpack, such that they have conflated and enlarged Habib's role for reasons not related to the evidence in this case. Including the status of Mr. Alkhalil as having escaped from a Canadian prison in Mr. Habib's PSR report is puzzling and places an unneeded sinister hue on Michael Habib. It is a penumbra of criminality that this Court should not consider in sentencing Michael Habib. There is no relevance to Mr. Alkhalil's escape from prison and fugitive status to the sentence that Michael Habib should receive.

Likewise, the Government's assertion that Habib (either through his statement to probation or through counsel's objections to the PSR) obstructed justice is not well taken. As to the objections to the PSR, all counsel could proceed with regarding proof of Habib's activity in the shipments, including his vouching for the buyer, was the evidence provided by the Government at the time. The defense has not alleged any misconduct regarding the timing of the Government's ability to access phones. But the Government makes allegations of Habib trying to get away with something, which is not supported by Habib's plea, his acceptance of a ten-year minimum mandatory, and enhancements that substantially affected his guidelines. If anything, Michael Habib's acceptance of guilt when the evidence at the time was significantly sparse- shows not obstruction of justice but acceptance of responsibility.

And just what has Habib tried to obstruct? His plea agreement included a role enhancement, which he accepted, knowing full well that doing so prevented him from

receiving the benefit of the new two-point reduction under Chapter IV. He has not challenged the guideline calculations. He has not challenged the amount of drugs that set the base level of the offense. He has not made claims of innocence or entrapment. His sentencing request is for a variance- he has not challenged the guidelines. His counsel's advocacy should not be mistaken for obstruction of justice when his actions before this Court demonstrably show otherwise.

### III) HARSH CONDITIONS AT MDC BROOKLYN

*"A society should be judged not by how it treats its outstanding citizens but by how it treats its criminals."*
Fyodor Dostoyevsky

The harsh and inhumane conditions at MDC Brooklyn, where Michael Habib has been held are well known to this Court through frequent publicity as well as the filings of other defendants in this case and others. Counsel will briefly include the most notorious of these conditions, along with citations that should also be well-known to this Court. Mr. Habib is entitled to have the harsh conditions he has lived under made part of the record for his sentencing and have these conditions, many of which persist to this day, considered as a reason for a downward variance pursuant to 18 U.S.C. §3553(a).

The judges in this District have recognized for nearly twenty-five years that the harsh confinement of individuals in the pre-trial facilities merits a below-guideline sentence. *See United States v. Francis*, 129 F. Supp. 2d 612 (S.D.N.Y. 2001) (departing one level because of harsh conditions of pre-trial confinement).

The Second Circuit has likewise approved of lower sentences based on harsh conditions of pre-trial and pre-sentencing confinement. *See,* e.g., *United States v. Carty*,

264 F.3d 191 (2d Cir. 2001) (Holding that pre-sentence conferment conditions may be severe enough to take a case "outside the heartland of the applicable Guideline." *Citing Koon v. United States,* 518 U.S. 81, 109, 116 S.Ct. 2035 (1996) ).

   The conditions at FDC are shockingly inhumane.

   The order of Judge Furman in *United States v. Chavez*, 22-cr-303 (JMF), issued January 4, 2024, and detailing the conditions at MDC during the time Michael Habib has been incarcerated provides all the information necessary for this Court to find that the conditions of Michael Habib's confinement were harsh enough to constitute an Eight Amendment violation.

   "While the Eighth Amendment's prohibition against cruel and unusual punishment does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392 (1981), the conditions of confinement must be at least "humane," *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970 (1994).

   For a large portion of time during Michael Habib's pre-trial incarceration, MDC was on lockdown, mostly due to staff shortages. This means that Michael Habib was prevented from having family visitation and from being able to use the limited library facilities to review discoveries and participate in his defense. It also means he was subject to solitary or near-solitary like confinement for days and weeks on end with the cycle never ending. The mental toll these types of repeated *incarcerations within incarcerations*- or lockdowns- have taken on Michael Habib are incalculable. Simply put, he has suffered. Judge Furman's findings and order are particularly detailed on this issue, including the fact that Habib was at MDC when many of these lockdowns detailed in Judge Furman's order occurred:

7

> [I]nmates at the MDC spend an inordinate amount of time on "lockdown" — that is, locked in their cells, prohibited from leaving for visits, calls, showers, classes, or exercise. (In Orwellian fashion, the Bureau of Prisons does not refer to these periods as "lockdowns"; instead, it refers to them as "modified operations." See Bureau of Prisons, Annual PREA Report CY 2022 (2023), at 1-2. But there is no mistaking what the practice entails.) As of the date of this Opinion and Order, inmates at the MDC have reportedly been on lockdown for much or all of the last three weeks following an assault on staff, with a maximum of "two hours outside their cells each day" during a short reprieve. . . For far longer, lockdowns have been especially common on weekends and holidays:
> "[P]eople who are detained at the MDC are not allowed out of their cells pretty much at a minimum three days of the week, Friday, Saturday, Sunday . . . ."). One defendant who kept a log of these lockdowns recently reported that he had been "locked down for 137 of [the] 245 days" he was detained at the MDC, or "more than 50% of his time at the facility." Sentencing Mem. at 7, United States v. Jacobs, 23-CR-413 (VB) (S.D.N.Y. Nov. 7, 2023), ECF No. 25.
>
> Regardless, confining inmates to their cells is, for at least some inmates, tantamount to solitary or near-solitary confinement, a practice that is increasingly viewed as inhumane. See Johnson v. Prentice, 144 S. Ct. 11, 12 (2023) (Jackson, J., dissenting from denial of certiorari) ("As Members of this Court have recognized, the practice of solitary confinement 'exact[s] a terrible price.'" (quoting Davis v. Ayala, 576 U.S. 257, 289 (2015) (Kennedy, J., concurring))); Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441-43 (3d Cir. 2020) (considering a "comprehensive meta-analysis of the existing literature on solitary confinement" that concluded that solitary confinement is "psychologically painful, can be traumatic and harmful, and puts many of those who have been subjected to it at risk of long-term . . . damage").

[22-cr-00303; ECF 32:9-10].

Michael Habib has been served spoiled food on a regular basis.[1] He has limited access to clean drinking water; the water comes out rusty and has an unpalatable odor. He has had limited access to basic health care. The health care issue is significant. For approximately the last year Michael Habib has suffered from Helicobacter pylori (H.

---

[1] Michael Habib is a Muslim and has specific dietary needs, but MDC's ability to serve him anything – even a piece of bread or fruit or container of milk that is not contaminated by vermin or spoiled is the issue.

8

pylori), which is a bacterial infection that can cause gastritis or peptic ulcers in the upper digestive tract. He has also experienced a radical change in his voice. The voice issue is alarming as in the one limited meeting with a health care professional, he was told that he immediately needed both a colonoscopy and endoscopy/laryngoscopy to rule out the presence of polyps, which could potentially be cancerous.

As to H Pylori, he was treated with a round of antibiotics which were ineffective. No follow-up treatment has been administered, so he continues to suffer from significant stomach pains. His medical care is, as Judge Furman found to be the norm, "egregiously slow":

> [T]he MDC is notoriously and, in some instances, egregiously slow in providing necessary medical and mental health treatment to inmates — especially where such care requires the attention of outside providers. See, e.g., Women in Prison Comm., Nat'l Ass'n of Women Judges, Second Visit to BOP's Metropolitan Detention Center (MDC), Brooklyn, New York 2 (2016) (finding that inmates at the MDC were denied essential gynecological care). It has become common for defense counsel to require court intervention to ensure that inmates receive basic care — and, even more shocking, not uncommon for court orders to go unheeded… see also John Annese, Brooklyn Judge Calls Sunset Park Federal Jail 'an Abomination' After Staff Ignore Order to Send Ailing Inmate to Medical Facility, N.Y. Daily News (Dec. 20, 2023), available at https://www.nydailynews.com/2023/12/ 20/brooklyn-judge-calls-sunset-park-federal-jail-an-abomination-after-staff-ignore-order-to send-ailing-inmate-to-medical-facility.
>
> …
> Finally, the MDC's physical conditions have long been problematic. See generally Order, United States v. Espinal, No. 11-CR-537 (JMA) (CLP) (E.D.N.Y. Oct. 17, 2016), ECF No. 39 (collecting "letters relating to the conditions at the Metropolitan Detention Center," which reported visible mold on walls and ceilings, contaminated drinking water, vermin infestation, mouse droppings falling through HVAC vents, and roaches and flies in showers); see also John Marzulli, Judge Refuses to Send Women to Brooklyn Jail with "Third World" [ Conditions, N.Y. Daily News (Oct. 7, 2016), available at https://www.nydailynews.com/2016/ 10/07/exclusive-judge-refuses-to-send-women-to-brooklyn-jail-with-third-world-conditions. …

[22-cr-00303; ECF 32:11-13].

One arm of the Government sought to hold Habib without bond. The other arm of the Government locked him down, served him swill, and jeopardized his health.

Footnotes four and five in Judge Forman's order list just some of the cases that Judges in this District have made findings about the deplorable conditions, causing Judge Forman to write: "It has gotten to the point that it is routine for judges in both this District and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC. Prosecutors no longer even put up a fight, let alone dispute that the state of affairs is unacceptable." [22-cr-00303; ECF 32: 2-3].

In footnote six, Judge Forman cites two cases. In *United States v. Days*, 19-CR-619 (CM) (S.D.N.Y. Apr. 29, 2021), ECF No. 35 in the sentencing transcript at 19-21, the Court stated:

> It is the finding of this Court that the conditions to which [the defendant] was subjected are as disgusting, inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that. . . . I think you've suffered triply as a result . . . . I am convinced that no good would be served by keeping you incarcerated for one minute more than I am required to do by law.

In *United States v. Morgan*, 19-CR-209 (RMB) (S.D.N.Y. May 5, 2020), ECF No. 90, in the sentencing transcript at 37, the Court imposed a below-Guidelines sentence on account of "the conditions of the MDC," among other things.

These conditions existed during the time Michael Habib was at MDC and continue to exist to this day. The conditions support the Court's sentencing Mr. Habib to 120 months. Habib will have been incarcerated under these conditions for approximately 540 days at the time of his sentencing, and issuing a sentence of 120 months, which is 48

months below the bottom of the guidelines, would credit Michael Habib with spending less than three days per day at MDC. [2]

If the Government- which can land a person on the moon, build the Panama Canal, and free Europe twice in one century from oppression - wanted to fix things at MDC it could do so. It clearly does not care about the people it incarcerates and leaves it to this Court to recognize the life it has shattered by living under these conditions for 540 days and left it to this Court to help Michael Habib pick up the pieces and move on. A ten-year sentence after serving 540 days in abhorrent conditions is more than sufficient to punish Michael Habib.

## CONCLUSION

Michael Habib requests this Court to sentence him for the conduct he has pleaded guilty to, and not because of uncharged, unproven, and murky allegations about a Canadian Wolfpack. The Government has seen fit to treat Michael Habib harsher than every other defendant in this case, although his activities were significantly less. This Court can right that wrong and sentence Michael Habib to ten years in prison, hardly lenient treatment, and commensurate with Habib's actions.

---

[2] 48 months is 1,472 days. If he was given credit for three days for each day served -3 x 540 (approximate days spent at MDC) = 1,620 which would be the days his sentence would be reduced. A sentence 48 months below the bottom of the guidelines would give Habib a credit of 1,472 days, which is less than three days' credit for each day he spent at MDC (1,620). In *United States v. Gonzalez*, 18-cr-00669 JPO (S.D.N.Y May 2, 2021) ECF: 240, Judge Oetken credited the defendant with 2 ½ days for each day served and sentenced the defendant to time served. Reported at Sentencing Law and Policy: Interesting (but unclear) local report on federal sentencings in NYC impacted by COVID realities (typepad.com)

Respectfully Submitted,

S/*Philip L. Reizenstein*
Philip L. Reizenstein, Esq.
Reizenstein & Associates PA
Florida Bar# 634026
2828 Coral Way
Suite 540
Miami, FL, 33145
(305) 444-0755
Philreizenstein@protonmail.com